# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH
# CIVIL ACTION NO. 5:13-CV-P76-R

**MARK A. PRICE**                                                                                         **PLAINTIFF**

v.

**RANDY WHITE et al.**                                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark A. Price, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

## I. SUMMARY OF CLAIMS

Plaintiff is incarcerated at the Kentucky State Penitentiary (KSP). He names as Defendants the following KSP employees: Warden Randy White; Dr. Steve Hiland; Nurse Bob Wilkerson; and Unit Administrators Hobert Huddleston and Mitchell McLeod. He also sues Dr. Doug Crall, Kentucky Department of Corrections (KDOC) Medical Director. All are sued in their individual and official capacities. He requests monetary and punitive damages and injunctive relief.

Plaintiff's first claim involves the alleged failure to treat his broken hand. He alleges that on February 15, 2013, he arrived at KSP with a broken right hand and informed KSP medical staff of that fact. He states that he "signed up to see Dr. Hiland but was ignored by KSP medical." He states that he again signed up on March 12th, at which point Nurse Wilkerson told him that KSP medical was aware of his injury and that Dr. Hiland was not going to see him. He alleges that Nurse Wilkerson told him to lie down, his hand will heal. He states that he then

wrote a letter to Dr. Hiland pleading for treatment for his hand, but Dr. Hiland ignored him.

According to the complaint, Plaintiff again requested medical assistance and Nurse Wilkerson came to see him and advised him that Dr. Hiland knew of his situation and was not going to treat him. Nurse Wilkerson told Plaintiff his hand would heal on its own. When Plaintiff told him his hand hurt, Nurse Wilkerson told him the pain would probably stop when it was totally healed. He states that on March 15, a nurse gave him an order for a mild pain pill. He states that he wrote to Warden White and appealed his grievance to Medical Director Crall. Plaintiff asserts that all Defendants were aware of yet neglected their responsibility in treating him or getting him treated. He alleges that his hand is healing "deformed."

Plaintiff's second claim involves his allegation that he is being forced to shave his head against his religious beliefs (Judaism) in violation of his First and Eighth Amendment rights. He alleges that on March 13, 2013, while in segregation he was told that Defendant Huddleston had told an office sergeant to "cut my hair, to shave my head completely bald." When Plaintiff stated that cutting his hair was against his religion he was told that KSP has a policy that inmates' heads are to be shaved. Specifically, Sergeant McLeod told him that Defendant Huddleston "don't care about that and he shaved my head against my will and beliefs and has continued to shave my head every other week," handcuffing and shackling Plaintiff to do so. Plaintiff states that he grieved this practice and was denied and that he appealed to Warden White, who told them to keep shaving his head. According to Plaintiff, under prison policy, exemptions to the grooming standards may be authorized in writing by the warden. Plaintiff asserts, "This exception was put into the policy for inmate that have religious beliefs such as to native American Indian or the Buddhism (or) the Judaism & Amish but KSP prison officials over

2

look it and shave everbodys heads in the segregation."

Plaintiff attaches a number of exhibits. He attaches a copy of KDOC's Policies and Procedures 13.2 relating to Health Maintenance Services effective January 3, 2011. He also attaches a grievance dated February 27, 2013, in which he asks to be taken to a specialist "ASAP" for his hand. Plaintiff states in his grievance that his hand injury occurred on January 6, 2013, at Little Sandy Correctional Complex, where he was told that his middle finger and knuckle were out of place. He also states in that grievance that, two weeks later, a doctor at Eastern Kentucky Correctional Complex x-rayed his hand and ordered him pain medication. The informal response referred Plaintiff to the provider note, which states:

> Distal right 3rd metacarpal has deformity where previously fractured, mildly decreased ROM adduction of proximal 3rd phalange with normal remaining distal joints. Normal distal sensory function and normal capillary refill. When cuffed behind back, patient able to adduct phalange to 90 degrees (patient did not know he was being observed). When cuffed in front, patients notes decreased ROM in adduction to only 45 degrees. Tendons all appear to be intact.

This note was signed by Nurse Wilkerson. In the assessment portion of that note, it states "Assessment/Plan: Old fracture of right 3rd distal metacarpal with mild deformity – I recommended ROM of area over the next several months. There is no additional assessment or treatment indicated at this time." KDOC notes also state that Plaintiff complained of an inability to move his right third finger and asserted that he was supposed to be sent to a specialist for treatment. That note also states that the injury to the right hand was self-inflicted on a cinder-block wall. Also attached is the Health Care Grievance Committee's Findings and Recommendations dated March 28, 2013, concurring with the informal response to Plaintiff's grievance. The final administrative review of the grievance concurred with the Grievance

Committee.

Plaintiff also attaches a memorandum from Warden White dated March 11, 2013, explaining that Plaintiff had been seen by Nurse Practitioner Wilkerson regarding his hand and noting that he is allowed to seek a second opinion, but at his expense. He also attaches a letter from KDOC stating that a review of his record revealed that the Nurse Practitioner at KSP had evaluated him and determined that, aside from temporarily restricting movement of his hand, no treatment was necessary. Also attached is a letter that Plaintiff sent stating that he cannot open or close his hand and that his hand was painful. The response from Medical Director Crall states that he has reviewed the record and finds that Plaintiff has received appropriate care.

With regard to his claim about cutting his hair, Plaintiff attaches the KSP Special Management Unit Operating Procedures, which includes the provision that "[h]air shall not be longer than two (2) inches in length." He also attaches grievances and letters and responses thereto in which it was explained to Plaintiff that the requirement that inmates in segregation have their hair cut exists for security and sanitation no matter the inmate's religion.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where

4

the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.    *Official-capacity claims*

Plaintiff sues Defendants, all of whom are state employees, in their official capacities. Because he sues the employees in their official capacities, the claims brought against them are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* 42 U.S.C. § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims for money damages from these state officers in their official capacities fail to allege cognizable claims under § 1983. Moreover, Defendants sued in their official capacities are immune from monetary damages under the Eleventh Amendment. *See id.* The Court will dismiss the claims for monetary relief in Defendants' official capacities pursuant to §§ 1915A(b)(1) and (b)(2).

### B.     *Individual-capacity claims*

####     1.     *Medical treatment claim*

This claim relates to Warden White, Dr. Hiland, Medical Director Crall, and Nurse Wilkerson.  There are no allegations against Unit Administrators Huddleston and McLeod relating to Plaintiff's medical treatment.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).  A prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  In other words, a court generally will not find deliberate indifference when some level of medical care has been offered to the inmate.  *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).  Thus, a difference in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment is not enough to state a deliberate-indifference claim.  *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  "The question of whether diagnostic techniques or other

6

forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice." *Rouse v. Hiland*, 5:08CV-P186-R, 2010 WL 2305492, at *3 (W.D. Ky. June 7, 2010) (citing *Estelle*, 429 U.S. at 107).

Here, the attachments to the complaint clearly establish that, at most, Plaintiff has alleged a difference in opinion as to what treatment his hand required. Those attachments show that Plaintiff was evaluated by Nurse Wilkerson, who determined that he had a deformity from an old fracture with a mildly decreased range of motion. That evaluation showed that when Plaintiff did not know he was being observed (hands cuffed behind his back) he was able to adduct the finger to 90 degrees, although the range of motion decreased to 45 degrees when he was cuffed in front. Plaintiff had normal distal sensory function and capillary refill and all tendons appeared to be intact. It was Nurse Wilkerson's medical opinion that no additional assessment or treatment was indicated. Plaintiff also received an order for a mild pain pill on March 15th. Moreover, he was informed that he could have a second opinion at his own cost. While Plaintiff may believe that his hand warrants more treatment than a mild pain pill and assessment as to range of motion, that belief is simply a disagreement with the treatment he has received. As such, it fails to state a claim for deliberate indifference. *See Westlake v. Lucas*, 537 F.2d at 860 n.5.

### 2. *Claim regarding forced hair cuts*

This claim involves Warden White and Unit Administrators Huddleston and McLeod. The complaint invokes the First and Eighth Amendments with regard to this claim. As discussed below, the Religious Land Use and Institutionalized Persons Act (RLUIPA) is potentially

7

applicable as well.

        a)       First Amendment

The First Amendment prevents the government from prohibiting or excessively curtailing the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). Plaintiff does have a constitutional right to practice his religion; however, because Plaintiff is a prisoner, Defendants need only show that regulations impinging on his constitutional right are reasonably related to a legitimate penological interest. *See Hayes v. Tenn.*, 242 F. App'x 546, 549 (6th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Phipps v. Parker*, 879 F. Supp. 734 (W.D. Ky. 1995), this Court found that summary judgment was appropriate against a plaintiff who alleged that his First Amendment rights were violated when forced to receive a short haircut while in the segregation unit at KSP pursuant to institutional policy.

However, given that this Court rendered its decision in *Phipps* almost 20 years ago and that, here, Plaintiff contends that religious exemptions are made at other Kentucky state prisons, the Court will allow this First Amendment claim to go forward.

        b)       Eighth Amendment

Plaintiff also contends that the forcible cutting of his hair is an Eighth Amendment violation. The policies and procedures for the Special Management Unit which Plaintiff attaches to his complaint provide that where an inmate "refuses to abide by the grooming standards," the inmate may be "forcibly restrain[ed] . . . until barber services are completed." According to Plaintiff's complaint he has had his head shaved every other week by Defendant McLeod, at the Direction of Unit Administrator Huddleston with Plaintiff being "handcuff[ed] & shackl[ed] . . . every time when doing so."

The Eighth Amendment protects from the infliction of "cruel and unusual punishments." However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam) (internal quotation marks and citations omitted). The Sixth Circuit Court of Appeals recently has held that "the force asserted to . . . remove [a prisoner/plaintiff's] hair [upon entering segregation at KSP] was minor, and not the type to invoke Eighth Amendment protection." *Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011). Plaintiff does not allege any harm to him from the use of the handcuffs and shackles, and handcuffs and shackles are an ordinary part of prison life, and their use, without more, is neither cruel nor unusual. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim relating to the forced haircuts.

        c)        RLUIPA

The RLUIPA, 42 U.S.C. § 2000cc-1(a), offers heightened statutory protection of the freedom of religion. Plaintiff's complaint makes no mention of RLUIPA. However, other circuits have held that it is error for a district court not to consider a RLUIPA claim where a *pro se* plaintiff has alleged a constitutional freedom of religion claim. *See Smith v. Johnson*, 202 F. App'x 547, 549 (3d Cir. 2006) ("We apply the relevant law, regardless of whether the pro se litigant has identified it by name"; noting that the Second and Tenth Circuits also have remanded to the district court for a determination under RLUIPA even where the RLUIPA was not alleged in the complaint). This Court will, therefore, consider whether Plaintiff has a claim under the RLUIPA as well.

Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007). On initial review, the Court will allow a claim against Defendants White, Huddleston, and McLeod under RLUIPA to go forward.

The Sixth Circuit has not explicitly ruled "on whether RLUIPA authorizes suits for monetary damages against state officials in their individual capacities." *Heard v. Caruso*, 351 F. App'x 1, 13 n.1 (6th Cir. 2009) (citing *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009) (discussing split of authority on issue)). However, the Sixth Circuit has suggested that monetary damages are not available. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (wherein court found without discussion of official versus individual capacity that RLUIPA authorized no monetary damages against defendants who were sued in individual and official capacities). Therefore, the Court will allow RLUIPA claims to go forward against Defendants White, Huddleston, and McLeod only for injunctive relief.

## III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Eighth Amendment claims against Warden Randy White, Doctors Steve Hiland and Doug Crall, and Nurse Bob Wilkerson relating to medical treatment and against Warden White and Unit Administrators Huddleston and McLeod relating to his hair cuts are **DISMISSED** pursuant to § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims for monetary damages against all Defendants are **DISMISSED** pursuant to § 1915A(b)(1) for failure to state a claim and (b)(2) for seeking monetary relief from Defendants who are immune from such relief.

The Clerk of Court is **DIRECTED** to terminate Defendants Hiland, Crall, and Wilkerson as parties to this action.

The Court will enter a Scheduling Order to govern the remaining claims, *i.e.*, the individual-capacity claims for monetary damages and claims for injunctive relief against Warden White and Unit Administrators Huddleston and McLeod under the First Amendment and for injunctive relief only against these Defendants under the RLUIPA.

Date:

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.009

11