UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00076-TBR

MARK A. PRICE                                                    Plaintiff

v.

RANDY WHITE, *et al.*                                    Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon Plaintiff Mark A. Price's Motion for Reinstatement for a Dismissed Claim, (Docket No. 41), and Defendants Randy White, Hobert Huddleston, and Mitchell McLeod's Motion for Summary Judgment, (Docket No. 43). Defendants have not responded to Plaintiff's Motion, and Plaintiff has not responded to Defendants' Motion. The time for both responses now has passed, and these matters are ripe for adjudication. For the following reasons, Plaintiff's Motion will be DENIED, Defendants' Motion will be GRANTED, and summary judgment will be entered in Defendants' favor.

BACKGROUND

Plaintiff is a convicted felon in the custody of the Kentucky Department of Corrections (KDOC). When this action was filed, Plaintiff was inmate at the Kentucky State Penitentiary (KSP). KSP policy requires that inmates in the disciplinary segregation unit keep their hair within a defined length. Plaintiff objected to having his hair cut because of his practice of the Jewish religion. Plaintiff submitted a grievance over the policy, which prison authorities denied. Plaintiff then brought this action,

claiming that the refusal to exempt him from KSP's grooming standards violated his First Amendment right of free exercise of religion. Plaintiff presently is incarcerated at the Kentucky State Reformatory (KSR).

On initial review, the Court dismissed Plaintiff's Eighth Amendment claims relating to medical treatment but allowed Plaintiff to proceed on his individual-capacity claim for monetary damages and on his claims for injunctive relief under the First Amendment and under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1a. (Docket No. 8.) Plaintiff's remaining claims all are based on Plaintiff's allegations that Defendants have violated his First Amendment rights to freely exercise his religion by forcing him to cut his hair in contravention of his religious beliefs.

DISCUSSION

The Court will first address Plaintiff's Motion for Reinstatement of a Dismissed Claim, (Docket No. 41), before turning to Defendants' Motion for Summary Judgment, (Docket No. 43).

I. **Plaintiff's Motion for Reinstatement of a Dismissed Claim (Docket No. 41)**

Plaintiff moves the Court to reinstate his Eighth Amendment medical-treatment claim relative to Defendant Randy White and dismissed defendants Dr. Steve Hiland, the physician at KSP; Dr. Doug Crall, the KDOC Medical Director; and Bob Wilkerson, a nurse at KSP. The Court construes this Motion as a motion for reconsideration of the Court's prior Order on initial review. (Docket No. 8.) As noted above, Defendants have not tendered a response to this Motion, and their Motion for Summary Judgment, discussed *infra* Part II, does not address the claim Plaintiff moves to reinstate. In spite

of the absence of Defendant's opposition, the Court finds Plaintiff's Motion without merit.

Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013). The Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

In its prior Order on initial review, the Court summarized Plaintiff's Eighth Amendment deliberate indifference claim as follows:

> Plaintiff's first claim involves the alleged failure to treat his broken hand. He alleges that on February 15, 2013, he arrived at KSP with a broken right hand and informed KSP medical staff of that fact. He states that he "signed up to see Dr. Hiland but was ignored by KSP medical." He states that he again signed up on

> March 12th, at which point Nurse Wilkerson told him that KSP medical was aware of his injury and that Dr. Hiland was not going to see him. He alleges that Nurse Wilkerson told him to lie down, his hand will heal. He states that he then wrote a letter to Dr. Hiland pleading for treatment for his hand, but Dr. Hiland ignored him.
>
> According to the complaint, Plaintiff again requested medical assistance and Nurse Wilkerson came to see him and advised him that Dr. Hiland knew of his situation and was not going to treat him. Nurse Wilkerson told Plaintiff his hand would heal on its own. When Plaintiff told him his hand hurt, Nurse Wilkerson told him the pain would probably stop when it was totally healed. He states that on March 15, a nurse gave him an order for a mild pain pill. He states that he wrote to Warden White and appealed his grievance to Medical Director Crall. Plaintiff asserts that all Defendants were aware of yet neglected their responsibility in treating him or getting him treated. He alleges that his hand is healing "deformed."

(Docket No. 8, at 1-2.)

Generally, "[w]here prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eight Amendment." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Thus, to establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle*, 429 U.S. at 104); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). In the Sixth Circuit, the test for "deliberate indifference" has both an objective and subjective component. *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the objective component, the inmate must show that the alleged deprivation is "sufficiently

serious"—*i.e.*, "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). And to satisfy the subjective component, he must show that prison officials had a "sufficiently culpable state of mind." *Id.*; *see also Farmer*, 511 U.S. at 834. More precisely, an inmate must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 837).

In support of his Motion to have his deliberate indifference claim reinstated, Plaintiff attaches some twenty-five pages of medical records. (*See* Docket No. 41-1.) These records indicate that Plaintiff was seen and treated by Dr. Sunil Thirkannad at the Kleinert Kutz Hand Care Center in January and February 2014. From these records, it appears that Plaintiff was evaluated on January 2 and then underwent an outpatient surgical procedure on January 29 to improve the range of motion in his right long finger. This procedure lasted 30 minutes or less. Plaintiff urges that with these medical records constitute "newly discovered evidence," with which he now can establish deliberate indifference to his serious medical needs. (*See* Docket No. 41.)

Plaintiff's newly submitted records, despite his insistence to the contrary, are insufficient to satisfy either the objective or subjective requirement. As such, this "newly discovered evidence" cannot resuscitate his deliberate indifference claim.

### A. Plaintiff's newly submitted medical records do not satisfy the objective component of his deliberate indifference claim.

In *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit determined that the objective component may be satisfied either (1) by an "obviousness" standard, meaning that which is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *id.* at 897 (quoting *Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct. 1, 1985) (unpublished table decision)), or (2) by "the effect of delay in treatment," *id.* (emphasis omitted). The *Blackmore* court went on to discuss its prior holding in *Napier v. Madison Cnty., Ky.*, where it previously held that an inmate "must place verifying medical evidence into the record to establish the detrimental effect of the delay." *Id.* at 898 (discussing *Napier*, 238 F.3d at 742). The court specifically clarified *Napier*'s "verifying medical evidence" requirement as applying only where claims involved minor maladies or nonobvious afflictions. *Id.* Conversely, where the facts show an "obvious need for medical care that laymen would readily discern as requiring prompt medical attention," no verifying medical evidence is necessary. *Id.*

The Court is not convinced that Plaintiff's complained-of symptoms—namely, a mildly decreased range of motion in his right long finger and associated pain—demonstrate the sort of "obvious need for medical care that laymen would readily discern." Moreover, as the Court noted on initial review, Plaintiff in fact received medical care on several occasions for these complaints. (*See* Docket No. 8, at 4, 6-7.) Therefore, to the extent Plaintiff's claim involves minor or nonobvious ailments, the Court finds that the newly submitted medical records do not satisfy Plaintiff's burden of producing verifying evidence establishing the detrimental effect of any delay in

treatment. These medical records indicate merely that Plaintiff was evaluated and treated, and apparently with good results, given that during his follow-up visit Dr. Thirkannad cleared Plaintiff to return to light and medium work after one week and regular work after two. (*See* Docket No. 41-1, at 15, 24.)

### B. Plaintiff's newly submitted medical records similarly do not satisfy the subjective component of his deliberate indifference claim.

Even if Plaintiff could somehow satisfy the objective requirement for his claim, the Court is nonetheless convinced that he cannot satisfy the subjective component. To satisfy the subjective component, an inmate must establish that a prison official acted with "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). Mere negligence on the part of the prison official will not suffice, *Farmer*, 511 U.S. at 838, nor does a claim of medical malpractice rise to the level of a constitutional violation simply because the victim is a prisoner, *Estelle*, 429 U.S. at 106. Although "fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury . . . [t]his is not to say that every request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *accord Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995); *Sharpe v. Patton*, 2010 WL 227702, at *10 (E.D. Ky. Jan. 19, 2010). Instead, to satisfy the subjective component, a prisoner must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S at 837.

In *Westlake v. Lucas*, the Sixth Circuit noted:

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments . . . .

537 F.2d at 860 n.5 (citations omitted). Stated differently, "when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated." *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 665 (E.D. Ky. 2002) (citing *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5). Following this reasoning, and tracking the Supreme Court's language in *Estelle*, the Sixth Circuit held in *Durham v. Nu'Man* that "[a] medical decision not to order [a specific medical treatment], or like measures, does not represent cruel and unusual punishment." 97 F.3d 862, 868 (6th Cir. 1996) (first alteration in original) (quoting *Estelle*, 429 U.S. at 107).

On initial review, the Court concluded that Plaintiff's Complaint and the attachments thereto "clearly establish that, at most, Plaintiff has alleged a difference in opinion as to what treatment his hand required." (Docket No. 8, at 7.) The Court explained: "While Plaintiff may believe that his hand warrants more treatment . . . that belief is simply a disagreement with the treatment he has received." (Docket No. 8, at 7.) Nothing in Plaintiff's newly submitted medical records alter that conclusion. At best, these records show that a different medical provider recommended and administered a different course of treatment. Plaintiff appears to makes much of the

fact that Dr. Thirkannad was an "out of prison hand specialist."[1] (*See* Docket No. 41, at 3.) But the fact that Dr. Thirkannad is a privately employed physician rather than a KDOC physician does nothing to establish that Warden White, Nurse Wilkerson, or Drs. Hiland or Crall acted with a culpable state of mind in denying medical care.

Furthermore, a difference of opinion as to the appropriate or best course of treatment between KSP medical personnel and Dr. Thirkannad, or between Plaintiff and KSP medical personnel, does not satisfy the subjective component. As the Eastern District of Kentucky reasoned in *Alexander v. Fed. Bureau of Prisons*: "While it appears that the plaintiff has not gotten what he wants, what he wants is not the issue. Ordering a specific type of [testing or treatment] is not the appropriate function of this Court. . . . [A]t most the plaintiff has alleged a difference of opinion between the plaintiff and his health care providers." 227 F. Supp. 2d at 666. In sum, neither Plaintiff's nor Dr. Thirkannad's difference of opinion with KSP medical personnel as to appropriate course of treatment rises to the level of deliberate indifference. Plaintiff's newly submitted medical evidence simply does not show that the facts satisfy the subjective component for his deliberate indifference claim.

* * *

Because Plaintiff's newly submitted records are insufficient to satisfy either the objective or subjective requirement, the Court finds no reason to reinstate his Eighth Amendment deliberate indifference claim. Accordingly, his Motion for Reinstatement of a Dismissed Claim, (Docket No. 41), will be denied.

---

[1] As it did previously on initial review, the Court again notes that while Plaintiff was incarcerated at KSP, he "was informed that he could have a second opinion at his own cost." (Docket No. 8, at 7.)

## II. Defendants' Motion for Summary Judgment (Docket No. 43)

Defendants presently move for summary judgment, arguing that (1) they are entitled to qualified immunity as to Plaintiff's claim for monetary damages, and (2) they are entitled to summary judgment as to Plaintiff's claims for injunctive relief because (a) the challenged grooming practices have been upheld in this circuit, and (b) the challenged grooming policy is being eliminated, thus eliminating the need for religious accommodation. (Docket No. 43-1, at 1.)

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Mindful that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys,[2] *see Haines v. Kerner*, 404 U.S. 519 (1972), the Court will proceed to address each of Defendants' arguments for summary judgment.

> **A. Defendants are entitled to qualified immunity on Plaintiff's claim for monetary damages.**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847-48 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity." *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). First, a court must determine whether the facts alleged show that the defendant's conduct violated a constitutional right." *Id.* (citing *Saucier*, 533 U.S. at 201). "If the plaintiff establishes that a constitutional violation occurred, a court must next consider 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to it. *Id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The Court may, in its discretion, decide which of these two inquiries is addressed first in light of the

---

[2] The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (refining *Saucier*, 533 U.S. at 201). "If the answer to either question is no, then the official is entitled to qualified immunity." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009)).

Defendants argue that neither prong is satisfied. Specifically, they urge that (1) there is no clearly established right to be exempt from prison grooming standards based on free exercise of religion under the First Amendment, and (2) there was no violation of Plaintiff's constitutional rights because Plaintiff's objections to the prison's grooming policy are not based on his sincerely held religious beliefs and, thus, are not protected under the First Amendment. (Docket No. 43-1, at 3.) Because the Court is satisfied that no clearly established right was violated, it need not delve into the earnestness of Plaintiff's religious convictions.

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell v. Johnson*, 308 F.3d 594, 601-02 (6th Cir. 2002) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). In determining whether a constitutional right was clearly established, the Court "must look first to decisions of the Supreme Court, then to decisions of this [circuit] and other courts within our circuit, and finally to decisions of other circuits." *Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)).

The constitutionality of prison grooming standards appears to be well settled in this circuit. In *Pollock v. Marshall*, a factually similar case decided some twenty-six

years ago, the Sixth Circuit upheld prison grooming regulations over an inmate's First Amendment free-exercise challenge. 845 F.2d 656, 657 (6th Cir. 1988). The plaintiff there professed a belief in the religion of the Lakota American Indians, who believe that hair is sacred and should not be cut, and sought a religious exemption from the prison's policy requiring inmates to keep their hair length within set limits. After he was refused an exemption, he filed suit under 28 U.S.C. § 1983, alleging that the forced cutting of his hair violated his First Amendment right to exercise his religion. The district court found that no constitutional violation had occurred and granted the defendants summary judgment. *Id.* The Sixth Circuit affirmed, concluding: "After balancing the defendant's interest in keeping prisoners' hair short against the right of the plaintiff to exercise the religion of the Lakota Indians, we hold that the regulation restricting hair length . . . is not unconstitutional." *Id.* at 659-60.

Relying on *Pollock*, this Court has upheld the constitutionality of the very same grooming policy at issue here. *Phipps v. Parker*, 879 F. Supp. 734 (W.D. Ky. 1995). At issue in *Phipps* was the KSP policy requiring that inmates in segregation keep their hair shorter than a designated length (the same policy as issue in the case at bar) and whether that policy was unconstitutional as applied to the plaintiff, an Orthodox Hasidic Jew. Noting that "[t]he validity of short haircuts in prisons has been upheld against a free exercise challenge, and the proffered reasons have been deemed legitimate by the Sixth Circuit," this Court concluded that KSP's haircutting policy did not violate the plaintiff's First Amendment rights. *Id.* at 735-36. The Eastern District of Kentucky, also relying on *Pollock*, reached a similar conclusion in *Oakes v. Green* and dismissed a *pro se* inmate's free-exercise claim on initial review. 2008 WL 559683, at *4 (E.D. Ky.

Feb. 27, 2008) ("[T]he Sixth Circuit's *Pollock* decision is controlling authority in this Court . . . . Accordingly, [the plaintiff's] Free Exercise claims fails [sic] as a matter of law and must be dismissed.").

Even more recently, the Sixth Circuit has confirmed that an inmate who is a practicing Hasidic Jew has no clearly established right to grow his hair and beard in contravention of a prison grooming regulation. *Flagner v. Wilkinson*, 241 F.3d 475 (6th Cir. 2001). The district court in *Flagner* denied the defendants' motion for summary judgment on qualified immunity grounds. The Sixth Circuit reversed, writing:

> Based on our decision in *Pollock* which upheld an application of the challenged prison regulation, we conclude that [the plaintiff's] right to grow his beard and sidelocks in contravention of the . . . prison grooming regulation at the time of his forced cutting was not sufficiently clear that a reasonable official would understand that what he is doing violates that right. We also recognize that our decision in *Pollock* has been followed in several unpublished opinions upholding the application of the [same] prison grooming regulation at issue in this case. Because [the plaintiff] has not satisfied his burden to establish that the defendant official[s] violated a clearly established constitutional right, the defendants are entitled to qualified immunity solely with respect to [the plaintiff's] money damages claims.

*Id.* at 482 (fourth alteration in original) (citations omitted) (internal quotation marks omitted).

In view of these decisions, the Court is left with the inescapable conclusion that, in the circumstances at hand, there is no clearly established right in this circuit to be exempt from prison grooming standards based on free exercise of religion under the First Amendment. Because Plaintiff has failed to satisfy his burden of establishing that Defendants violated a clearly established right, Defendants are entitled to qualified

immunity as to Plaintiff's claim for monetary damages. As such, it is unnecessary for the Court to consider the remaining prong of the qualified immunity analysis.

### B. Plaintiff's claims for injunctive relief are moot.

After initial review, the Court permitted Plaintiff to proceed on his claims for injunctive relief under the First Amendment and the RLUIPA. Based on the foregoing discussion of precedent in this circuit pertaining to the constitutionality of the same or similar prison grooming policies, the Court is confident that Plaintiff is not entitled to injunctive relief exempting him from those grooming standards. However, the Court need not discuss the merits of these claims at length because it appears that these claims now are moot for several reasons.

First, though not specifically addressed by Defendants in their Motion for Summary Judgment, Plaintiff's claims for injunctive relief likely are mooted because he is no longer housed at KSP. The Sixth Circuit has routinely found that an inmate's request for injunctive relief is moot upon his transfer to another facility where those requests were directed specifically at the prior facility's policies and procedures. *See, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.3d 601, 605 (6th Cir. 1993); *see also Sossamon v. Texas*, 131 S. Ct. 1651, 1669-70 (2011) (Sotomayor, J., dissenting) (discussing a number of cases, including the Sixth Circuit's decision in *Colvin*, in which courts have found that an RLUIPA suit seeking injunctive relief may be mooted by a plaintiff's transfer from the institution where the alleged violation took place prior to adjudication on the merits). Defendants aver that "[t]he grooming standards at issue are currently

used only at [KSP]." (Docket No. 43-1, at 5.)  As such, because Plaintiff now is housed at KSR, his claims for injunctive relief are moot.

Plaintiff's claims for injunctive relief appear moot for an additional reason as well.  The grooming restrictions at issue apply only to "special management units"; general population inmates have long been permitted to have hair and beards of any length so long as they were kept clean.  Defendants state that as a part of KDOC's efforts to continuously review its policies and procedures, KDOC has elected to drop its more restrictive grooming requirements for special-management-unit inmates.[3]  (Docket No. 43-1.)  According to Defendants, this new regulation is currently undergoing the legislative review process required by Kentucky Revised Statutes chapter 13A, and the grooming restrictions at issue have been suspended pending final approval by the legislative oversight committee.  (Docket No. 43-1, at 7.)

A defendant's voluntary cessation of a challenged practice does not necessarily moot a case.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).  However, a number of courts have recognized that a prisoner's claim for injunctive relief may be mooted where there is a policy change and where prison officials, in good faith, voluntarily cease the complained-of activity.  For example, in *Sossamon v. Lone Star State of Texas*, the Fifth Circuit dismissed as moot an inmate's claim for injunctive relief.  560 F.3d 316, 342-26  (5th Cir. 2009), *aff'd sub nom.*

---

[3] The Court notes that in a separate action also pending before this Court that similarly challenges KSP's grooming policy on First Amendment free-exercise-of-religion grounds, Warden White has submitted an affidavit stating that the policy requiring haircuts for special-management-unit inmates was being suspended. *See Hildolf Wodansson v. Randy White, et al.*, 5:13-cv-00171, Docket No. 23-1, at 1-2 (May 6, 2014). Attached to that affidavit is a copy of an April 22, 2014, memorandum sent by Warden White announcing: "Effective immediately, in light of upcoming changes to CPP 10.2, which will remove hair length restrictions for segregation inmates; KSP will no longer enforce mandatory haircuts and shaves for inmates." *Id.*, Docket No. 23-1, at 3. Defendants' instant Motion for Summary Judgment was filed on April 18, 2014, prior to the filing of the affidavit and memorandum in *Wodansson*.

*Sossamon v. Tex.*, 131 S. Ct. 1651 (2011). There, the prison director averred that the complained-of policy was no longer in force, and the court found no "evidence that the voluntary cessation [wa]s a sham." *Id.* at 325. The court reasoned that the "good faith nature" of the defendant's change in policy rendered moot the inmate's claim for injunctive relief. *Id.* Similarly, in *Nelson v. Miller*, the Seventh Circuit held that a prisoner's RLUIPA claim for injunctive relief was moot where the complained-of activity had ceased. 570 F.3d 868, 882-83 (7th Cir. 2009). The district court in *Nelson* found that the inmate's request for injunctive relief, specifically that he be provided a nonmeat diet in accordance with his religious beliefs, was moot because he was already receiving a nonmeat diet as requested. On appeal, the inmate contended that his request for injunctive relief was not moot because his religious diet could be revoked at any time. The Seventh Circuit affirmed the district court's dismissal as moot of his RLUIPA claim because there was nothing to indicate that the prison intended to revoke the religious diet being provided to him. *Id.*

In view of the facts that (1) Plaintiff is no longer housed at KSP, the only facility to employ the restrictive grooming policy at issue, and (2) KDOC has suspended the policy at issue and is in the process of changing that policy to discontinue the challenged grooming requirements for segregation inmates, the Court finds that Plaintiff's claims for injunctive relief under the First Amendment and the RLUIPA are moot.

## CONCLUSION

For the foregoing reasons, the Court will DENY Plaintiff's Motion for Reinstatement of a Dismissed Claim, (Docket No. 41), and GRANT Defendants' Motion for Summary Judgment, (Docket No. 43). An appropriate Order will issue concurrently with this Opinion.

Date:


cc: Plaintiff Mark A. Price, *pro se*
 Counsel for Defendants